IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Russell Walker, et al., <br><br> Plaintiffs, <br><br> vs. <br><br> Joseph M. Arpaio, et al., <br><br> Defendants. | No. CV-15-00226-PHX-SPL <br><br> **ORDER** |

Before the Court is Defendants' Motion for Partial Summary Judgment. (Doc. 115.) For the reasons that follow, Defendants' motion will be granted in part.

## I. Background

On November 17, 2013, Douglas Walker was booked as a pretrial detainee into the Lower Buckeye Jail facility run by the Maricopa County Sheriff's Office ("MCSO"). (Doc. 116-1 at 2, 9.) Walker was charged with failure to appear, theft, kidnapping and armed robbery. (Id.) Because of the nature of his charges, Walker was classified as a maximum security inmate. (Doc. 116-1 at 7.) Walker requested placement in protective custody, which was automatically granted pursuant to MCSO policy. (Docs. 116 ¶ 3; 116-1 at 11-12; 122 ¶ 3). Walker was ultimately assigned to cell number three ("Cell 3") in Tower 24B of the maximum security administrative segregation unit ("Ad Seg"). (Docs. 116 ¶ 5; 122 ¶ 5.)

On March 13, 2014, Andrew Ward was booked into the Maricopa County Jail

after being arrested and charged for the murder of his brother.[1] (Docs. 116 ¶ 6; 122 ¶¶ 6, 38.) Ward also requested protective custody for fear of his safety. (Doc. 116-1 at 16.) After his release from the psychiatric unit, Ward was placed in Cell 3 with Walker. (Docs. 116 ¶¶ 7-8; 122 ¶¶ 7-8.) Ward was also classified as maximum security due to his charges. (Docs. 116-1 at 18.) Walker and Ward shared a cell for three weeks without any reported incidents. (Docs. 116 ¶ 9; 122 ¶ 9.) But, on April 2, 2014, Ward assaulted Walker in their cell, ultimately killing him. (Docs. 116 ¶ 10; 122 ¶ 10; 122-1 at 53-55.)

Around the time of the assault, Detention Officer Adrian Huffman was in the pod handing out canteen and grievance forms to the inmates. (Docs. 116 ¶ 11; 122 ¶ 11.) This was not a formal head count or identification count. (Id.) While Huffman was in the pod, four inmates were out of their cells for their daily hour in the common area. (Dos. 122-2 at 4, 91.) At least two of those inmates, Jonathon Cole and Travis Schuetz, were walking around the lower level where Cell 3 was located and walked by Cell 3. (Docs. 116 ¶ 11; 116-1 at 34; 122 ¶ 11; 122-2 at 5, 8-9, 91-102.) Huffman did not hear any disturbance during this time, including when he was distributing paperwork to Cell 3 (Docs. 116 ¶ 11; 116-1 at 35; 122 ¶ 11), nor did the other inmates alert Huffman to any problems in the pod (Doc. 116-1 at 33, 35). After Huffman left the pod, a couple of inmates noticed something seriously wrong in Cell 3. Cole pressed the emergency button and pounded on the windows to alert the detention officers. (Doc. 122-2 at 12.) Medical personnel were called; however, Walker was pronounced dead at the scene. (Docs. 116 ¶ 12; 122 ¶ 12.)

Plaintiffs Russell Walker, the personal representative of Walker's estate, and the Estate of Douglas Walker, the decedent, bring this action against Joseph Arpaio in his individual capacity, Paul Penzone in his official capacity as Maricopa County Sheriff,[2] Detention Officer Adrian Huffman in his individual and official capacities as detention

---

[1] Ward was initially sent to the psychiatric unit for evaluation prior to assignment to Ad Seg. (Docs. 116 ¶ 6; 122 ¶ 6.)

[2] Current MCSO Sheriff Paul Penzone replaces former Sheriff Joseph Arpaio in his official capacity.

officer for MCSO, and John Doe Core Officer in his individual and official capacities as a detention officer with MCSO. (Doc. 1.) Plaintiffs assert a 42 U.S.C. § 1983 claim (Count I). (Id.) Plaintiffs also bring three state-law claims: gross negligence (Count II), violations of Article 2 §§ 4, 15 of the Arizona Constitution (Count III), and wrongful death (Count IV). (Id.) On December 19, 2016, Defendants filed a Motion for Partial Summary Judgment. (Doc. 115.) The motion is ready for decision.

## II.     Legal Standard

A court must grant summary judgment if the pleadings and supporting documents, viewed in the light most favorable to the non-moving party, "show[] that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). A fact is "material" when, under the governing substantive law, it could affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine dispute of material fact arises if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

The party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, and affidavits, which it believes demonstrate the absence of any genuine issue of material fact. *Celotex*, 477 U.S. at 323. The burden then shifts to the party opposing summary judgment, who "must make a showing sufficient to establish a genuine dispute of material fact regarding the existence of the essential elements of his case that he must prove at trial." *Gorman v. Wolpoff & Abramson, LLP,* 584 F.3d 1147, 1153 (9th Cir. 2009) (citation omitted); *see also Celotex*, 477 U.S. at 322-23 ("[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be no 'genuine issue as to any material fact,' since a complete

failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."). The party opposing summary judgment "may not rest upon the mere allegations or denials of [the party's] pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); *see also Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986).

**III. Discussion**

    **A. John Doe Core Officer**

Throughout Plaintiffs' Complaint, they allege wrongs done by the officer who assigned Ward to Cell 3 with Walker. (Doc. 1.) Plaintiffs identify this officer as "John Doe Core Officer." (Id.) Through discovery, the assigning officer was identified as James Dickson. (Doc. 116-1 at 24-25.) Plaintiffs have not amended their Complaint to reflect any allegations made toward Dickson, and have not provided any good cause for the failure to amend their Complaint in compliance with Federal Rule 16(b). Fed. R. Civ. P. 16(b)(4). Time to amend the pleadings expired on June 22, 2015. (Doc. 23.) In their response, Plaintiffs fail to address Defendants' request for dismissal as to all claims against John Doe Core Officer. (Doc. 121.) Therefore, Defendants' motion is granted and all claims against John Doe Core Officer will be dismissed. *See Gillespie v. Civiletti*, 629 F.2d 637, 642 (9th Cir. 1980) ("John Doe" may be used until the parties have been given an opportunity through discovery to identify the unknown defendant).

    **B. 42 U.S.C. § 1983**

Plaintiffs allege a single count under 42 U.S.C. § 1983 against all Defendants. (Doc. 1 ¶¶ 41-48.) Plaintiffs allege that Penzone, in his official capacity, had "a policy, custom, or practice of randomly assigning detainees to cells in the administrative segregation unit without consideration of the risk that such random assignments might have upon vulnerable inmates." (Doc. 1 ¶ 45.) Plaintiffs further allege that Arpaio, in his individual capacity, was deliberately indifferent in failing to train and supervise jail officers. (Doc. 1 ¶ 46.) Although Plaintiffs allege that this Count is against Huffman in

4

his individual and official capacity, Plaintiffs make no factual allegations as to how Huffman violated § 1983 in either capacity. These failures allegedly resulted in a breach of Walker's Fourteenth Amendment right to due process. (Id.)

### 1. Huffman

Prison officials may be held liable under the Fourteenth Amendment "if they 'acted with deliberate indifference to a substantial risk of serious harm.'" *Byrd v. Maricopa Cnty. Bd. of Supervisors,* 845 F.3d 919, 924 (9th Cir. 2017) (citing *Frost v. Agnos,* 152 F.3d 1124, 1128 (9th Cir. 1998)). A plaintiff must "prove more than negligence but less than subjective intent—something akin to reckless disregard." *Castro v. Cnty. of L.A.,* 833 F.3d 1060, 1071 (9th Cir. 2016).[3] The elements are: (1) an intentional decision by the officer; (2) the condition put plaintiff at substantial risk of suffering serious harm; (3) the officer did not take objectively reasonable available measures to abate the risk making the consequences of the officer's conduct obvious; and (4) by not taking the measure, the defendant caused plaintiff's injuries. *Id.*

Although Plaintiffs allege violations against all Defendants in Count I, they did not describe any constitutional violations on the part of Defendant Huffman in their Complaint. (Doc. 1 ¶¶ 42-48.) At most, Plaintiffs generally alleged that Huffman "distributed canteen and grievance forms to each cell, including Cell #3," but "did not look into every cell." (Doc. 1 ¶ 30.) In their Response to Defendants' Motion for Partial Summary Judgment, Plaintiffs argued that Huffman's "perfunctory security walk" was deliberately indifferent to the safety and security of Walker. (Doc. 121 at 13-14.) Plaintiffs acknowledge that Huffman was distributing forms, and not performing a head or ID count. (Doc. 122 ¶ 11.) If Huffman's inaction resulted from something unintentional, Plaintiffs cannot prove an intentional decision. *Castro*, 833 F.3d at 1070. Given the undisputed facts that (1) Huffman and the other inmates walking around the

---

[3] The Ninth Circuit was specifically addressing a failure-to-protect claim, but the Court's reasoning can apply to all Fourteenth Amendment, pretrial-detainee claims against individual officers, whether caused by the official's action or inaction. *See id.* at 1070.

pod heard no commotion coming from Cell 3, and (2) that Huffman was not performing a formal head or ID count, Plaintiffs do not raise a genuine dispute of material fact that Huffman intentionally chose not to look inside Cell 3, thereby placing Walker at substantial risk of suffering serious harm. As such, the motion is granted in favor of Huffman as to Count I.

### 2. Arpaio

In a § 1983 claim, "[s]upervisory liability is imposed against a supervisory official in his individual capacity for his own culpable action or inaction in the training, supervision, or control of his subordinates, for his acquiescence in the constitutional deprivations of which the complaint is made, or callous indifference to the rights of others." *Preschooler II v. Clark Cnty. Sch. Bd. of Tr.*, 479 F.3d 1175, 1183 (9th Cir. 2007) (quoting *Menotti v. City of Seattle*, 409 F.3d 1113, 1149 (9th Cir. 2005)). Supervisory liability can exist without overt personal participation in the offensive act if supervisory officials implement a policy that is the moving force of a constitutional violation. *Clement v. Gomez*, 298 F.3d 898, 905 (9th Cir. 2002). To be considered the "moving force" behind an unconstitutional violation, the supervisor must "set in motion a series of acts by others, or knowingly refuse[] to terminate a series of acts by others, which he knew or reasonably should have known, would cause others to inflict the constitutional injury." *Larez v. City of L.A.*, 946 F.2d 630, 646 (9th Cir. 1991).

In order to prevail on a failure-to-train or failure-to-supervise claim, the plaintiff must show that the failure amounted to deliberate indifference. *Canell v. Lightner,* 143 F.3d 1210, 1213 (9th Cir. 1998) (citing *City of Canton v. Harris,* 489 U.S. 378, 388 (1989)). The inadequate training or supervision must be the result of a deliberate or conscious choice on the part of the defendant. *Id.* at 1214.

Here, in keeping with their failure-to train and failure-to-supervise claim, Plaintiffs allege that Arpaio failed to implement policies to ensure that vulnerable inmates in Ad Seg were not housed with aggressive and violent inmates. (Doc. 1 ¶ 44.) In their Response, Plaintiffs appear to change course and pursue a failure-to-protect claim. (Doc.

121 at 6-7.) Specifically, Plaintiffs describe three policies they believe caused Walker's death: (1) only sending inmates charged with gang-related murders to closed/private cells, (2) having Ad Seg officers make cell assignments without access to the full classification analysis for each inmate, and (3) using Ad Seg as "overflow housing" for psychiatric inmates. (Doc. 121 at 9-11.) In addition, Plaintiffs allege Arpaio was put on notice that these practices created a substantial risk of harm to an inmate in Ad Seg because of the deaths of two other inmates in Ad Seg prior to Walker's death. (Doc. 121 at 2.)

Regardless of the theory of liability, the legal standard for supervisory liability is the same. It is not the policies themselves that are at issue; rather it is whether the supervisory official implemented or failed to implement a policy that is the moving force behind the unconstitutional violation, after knowing that the constitutional violation would occur.

Plaintiffs allege that "Arpaio was aware of several prior instances of inmates in administrative segregation killing their cellmates." (Doc. 1 ¶ 44.) Plaintiffs further assert that the death of inmate Wietse ten Boden[4] four years before Walker's death and the death of inmate John Klatt[5] a few months before Walker's death should have put Arpaio on notice that the cell assignment procedures within Ad Seg were dangerous for vulnerable[6] inmates. (Doc. 121 at 2.) Defendants argue both deaths are non-starters because liability for either death has not been attributed to the policies of the jail. (Doc. 125 at 1.) The Court agrees. No court made any findings in either case. The ten Boden case settled and the Klatt case has not yet gone to trial. The cases are factually distinct—

---

[4] Mr. ten Boden's death was alleged to be caused by racial animus. (Doc. 125 at 1.)

[5] Mr. Klatt's death was alleged to be caused by retaliation due to the nature of his charges, which was sexual misconduct with a minor. (Doc. 125 at 2.)

[6] Plaintiffs have not alleged any facts, outside of Walker's stature, that made him a vulnerable inmate. (Doc. 1 ¶ 24) There were no special classifications in his record that would have put the assigning officers on notice that Walker needed additional protection. Indeed, Walker was assigned maximum security due to the nature of his charges.

7

one involved racial animus and one involved the sensitive nature of the victim's charges. No reasonable jury could find that Arpaio had been put on notice of a policy that posed a substantial risk to Walker's safety and then failed to act in light of that risk. Therefore, Arpaio, in his individual capacity, is entitled to summary judgment on Count I.

### 3. Qualified Immunity

Courts must first determine whether an official violated a statutory or constitutional right that was clearly established at the time of the alleged conduct in order to determine whether a government official is entitled to qualified immunity. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). If no constitutional right was violated, "there is no necessity for further inquiries concerning qualified immunity." *Brittain v. Hansen*, 451 F.3d 982, 988 (9th Cir. 2006). Here, Plaintiffs have not shown that Defendants in their individual capacities violated Walker's federal constitutional rights. Therefore, the Court need not inquire into Defendants' qualified immunity.

## C. State-law Claims

"When interpreting state-law, federal courts are bound by decisions of the state's highest court. In the absence of such a decision, a federal court must predict how the highest state court would decide the issue using intermediate appellate court decisions, decisions from other jurisdictions, statutes, treatises, and restatements as guidance." *Trishan Air, Inc. v. Fed. Ins. Co.*, 635 F.3d 422, 427 (9th Cir. 2011) (internal citation omitted). Here, Plaintiffs bring three state-law claims against Defendants: gross negligence (Count II), Arizona constitutional violations (Count III), and wrongful death (Count IV). (Doc. 1.)

### 1. Gross Negligence

A party is grossly negligent if he acts or fails to act when he knows or has reason to know facts which would lead a reasonable person to realize that his conduct not only creates an unreasonable risk of bodily harm to others but also involves a high probability that substantial harm will result. *Walls v. Ariz. Dep't of Pub. Safety*, 826 P.2d 1217, 1221 (Ariz. 1991). Gross negligence is different from ordinary negligence in quality and not

degree; a person can be very negligent and still not be grossly negligent. *Id.* (citing *Kemp v. Pinal Cnty.*, 474 P.2d 840, 843-44 (Ariz. App. Ct. 1970)). A court may withdraw the issue of gross negligence from the jury only when no evidence is introduced that would lead a reasonable person to find gross negligence. *Dickey v. City of Flagstaff*, 4 P.3d 965, 969 (Ariz. Ct. App. 1999), *overruled on other grounds by Dickey ex rel. Dickey v. City of Flagstaff*, 66 P.3d 44 (Ariz. 2003) (citation omitted).

Here, it is unclear what acts committed by which Defendants are even at issue. In the Complaint, Plaintiffs state that Defendants "failed to conduct reasonable and required security checks," failed "to respond to the repeated emergency calls of an inmate down," and failed "to take reasonable steps to protect inmates from violent assault by other inmates, including appropriate classification and assignment." (Doc. 1 ¶ 50, 53.) Plaintiffs generically allege the basic elements of a gross negligence claim, but provide no facts to support the claim. (Doc. 1 ¶ 51.) Plaintiffs, in their Response, allege that the following actions constitute gross negligence: (1) institution of the three policies identified above; (2) Huffman's perfunctory security walk; and (3) "the decision to place Ward in with a cellmate…." (Doc. 121 at 15.) In making these allegations, Plaintiffs cite only to their expert's report for support. (Id.) The expert's report complains about Ward's placement in a cell with any other inmate. (Id.) Defendants argue that Plaintiffs' Complaint does not describe any conduct by a particular Defendant that amounted to gross negligence. (Doc. 116 at 13.)

Plaintiffs identify a single action taken by a specific Defendant—Huffman's "perfunctory security walk." (Doc. 121 at 15.) It is undisputed that Huffman was in the pod close to the time of the assault, but by the time someone noticed the blood in Cell 3, Huffman was performing other duties. Gross negligence, however, cannot be presumed from Huffman's mere presence in the pod near the time of the assault. Plaintiffs do not identify any behavior by Huffman that he acted or failed to act when he knew or had reason to know facts which would lead a reasonable person to realize that his conduct not only creates an unreasonable risk of bodily harm to others but also involves a high

9

probability that substantial harm will result.

As for the remainder of the Defendants, Plaintiffs fail to make a showing sufficient to establish the existence of essential elements of a gross negligence claim on which they bear the burden of proof at trial.[7] Plaintiffs generic allegation of gross negligence against "Defendants" is insufficient to meet their burden of proof. At summary judgment, Plaintiffs must do more than make allegations. For these reasons, the court grants summary judgment in favor of Defendants on Count II.

### 2. Arizona Constitution

Plaintiffs fail to clearly identify which Defendants they claim violated Walker's constitutional rights under the Arizona Constitution. (Doc. 1 ¶¶ 55-59.) The heading in the Complaint alleges the claim is leveled against Arpaio and Maricopa County. However, two sentences down, Plaintiffs allege the claim is asserted against "Arpaio and the remaining Defendants in their official capacities." (Doc. 1 ¶ 56.) Maricopa County is not a defendant in this action. The Court construes Plaintiffs' Complaint as bringing Count III against Defendants in their official capacities—Sheriff Paul Penzone and Huffman—and not against Arpaio or Huffman in their individual capacities.

Plaintiffs allege Defendants violated Walker's due process rights[8] and his right to be free from cruel and unusual punishment. (Doc. 1 ¶ 57.) Defendants move for summary judgment because "respondeat superior may not serve as the basis for imposing § 1983 liability." (Doc. 115 at 13.) However, this count is not based on § 1983 liability. The Court will deny summary judgment on Count III.

---

[7] Plaintiffs rely heavily on the expert testimony of Jeff Eiser to support their argument. (Doc. 121 at 15.) But conclusory assertions, even from an expert witness, are not sufficient to withstand the burden of summary judgment. *See Kelsey v. City of New York*, No. 03-CV-5978 (JFB) (KAM), 2007 WL 1352550, at *5 (E.D.N.Y. May 7, 2007) ("even if the expert's testimony is admissible, the conclusory assertions contained therein are insufficient to create any issues of fact on the question of deliberate indifference.").

[8] Plaintiffs cite in their Complaint Article 2 § 2 for the Arizona due process clause (Doc. 1 ¶ 57), but the court construes Plaintiffs to mean Article 2 § 4.

### 3. **Wrongful Death**

A wrongful death action can be brought by the statutory beneficiaries of a deceased person if an action for negligence or wrongful conduct could have been maintained by the deceased, due to the circumstances of the injury, had death not occurred. *Summerfield v. Super. Ct. In and For Maricopa Cnty.*, 698 P.2d 712, 720 (Ariz. 1985); A.R.S. § 12-611. The wrongful death act confers an original and distinct claim for the surviving spouse, children or parents, and seeks recovery for the damages sustained by the survivors. *James v. Phoenix Gen. Hosp., Inc.,* 744 P.2d 695, 701, 704 (Ariz. 1987). Damages are not an essential element of a statutory wrongful death claim because the jury is not required to award any compensation; the jury may instead award whatever amount it deems "fair and just." *Walsh v. Advanced Cardiac Specialists Chartered*, 273 P.3d 645, 648 (Ariz. 2012) (citing *Quinonez ex rel. Quinonez v. Andersen*, 696 P.2d 1342, 1347 (Ariz. Ct. App. 1984)); A.R.S. § 12-613. Wrongful death damages are limited to injuries resulting from the death, which may include: the decedent's prospective earning capacity; the loss of companionship, comfort, and guidance caused by the death; and the survivor's emotional suffering, but not the decedent's own pain and suffering. *Id.* at 648 (quotation omitted).

Here, Plaintiffs bring Count IV against Maricopa County and Arpaio. Maricopa County is not a party to this action. Plaintiffs do not specify whether they bring Count IV against Arpaio in his individual or official capacity. However, no claims remain against Arpaio in his individual capacity, thereby precluding a wrongful death action against him. Although wrongful death is a distinct cause of action, there must also be a claim that Walker could have pursued had he survived. Arpaio will be dismissed from this action in his individual capacity.

Plaintiffs allege Walker's statutory beneficiaries have suffered the loss of "love, affection, companionship, care, protection, and guidance" and suffered "pain, grief, sorrow, anguish, stress, shock, and mental suffering." (Doc. 1 ¶ 59.) Defendants argue that Walker had no relationship with his mother or son, so there is no cognizable loss or

suffering that can support a claim for wrongful death. (Doc. 115 at 15.) Defendants also state that Plaintiffs did not disclose any other recoverable damages in the Complaint, so the wrongful death claim should be dismissed. (Id. at 116.)

Although damages are not an essential element of a wrongful death claim, damages are the only relief available under a wrongful death claim. Plaintiffs do not seek any compensatory damages; they seek only compensation for a mother and son's grief and loss of consortium. (Doc. 116-1 at 75.) Walker's mother, however, has had no relationship with her son for 17 years, and Walker's son only had contact with his father for one year when he was eight to nine years old. Nevertheless, Arizona's wrongful-death statute permits recovery for loss of consortium *and* the grief of the survivors. While Plaintiffs will be challenged to prove any loss of consortium, the Court cannot say as a matter of law that the survivors suffered no grief. The Court will leave it to a jury to decide whether compensation is appropriate. *See Hernandez v. State*, 623 P.2d 819, 821 (Ariz. App. Ct. 1980) ("Translation into dollars of the loss of companionship, affection, and society, and the anguish the [survivors] experienced as a result of [the decedent's] death is peculiarly the jury's function . . . [e]ach case must be considered on its own facts."). The claim remains as to Paul Penzone in his official capacity.

### IV. Punitive Damages

#### A. 42 U.S.C. § 1983

Officials can only be held liable for punitive damages in their individual capacities. *City of Newport v. Fact Concerts, Inc.* 453 U.S. 247, 271 (1981) (stating that under § 1983 punitive damages may not be recovered from municipalities). Because summary judgment was granted in favor of Defendants Arpaio, Huffman, and John Doe Core Officer on Count I, Plaintiffs no longer have a claim for punitive damages under § 1983. Although Penzone remains a Defendant, it is in his official capacity. Official capacity suits are the same as suits against a municipality. Punitive damages are not available from a municipality. Therefore, Plaintiffs' demand for punitive damages under § 1983 must be dismissed.

### B. State-law Claims

"Neither a public entity nor a public employee acting within the scope of his employment is liable for punitive or exemplary damages." A.R.S. § 12-820.04. Plaintiffs have not alleged that any Defendant acted outside the scope of their employment. As such, summary judgment is granted to Defendants for all requests for punitive damages on the state-law claims.

### V. Conclusion

The Court has considered each claim in the light most favorable to Plaintiffs and determined that Defendant Arpaio and John Doe Core Officer should be dismissed from this action. Additionally, the following counts should be dismissed: Count I against Huffman, and Count II in its entirety. The following counts will move forward toward trial: Counts I, III, and IV against Penzone in his official capacity, and Count III against Huffman in his official capacity. Accordingly,

**IT IS ORDERED**:

1. That Defendants' Motion for Partial Summary Judgment (Doc.115) is **granted in part**;

2. That Defendants John Doe Core Officer and Joseph Arpaio in their individual capacity are **dismissed** from this action with prejudice;

3. That Sheriff Paul Penzone is substituted for ex-Sheriff Joseph Arpaio in his official capacity;

4. That Count II is **dismissed** in its entirety;

5. That Defendant Huffman is **dismissed** from Count I;

6. That the claims for punitive damages are **dismissed**; and

7. That the remainder of the motion (Doc. 115) is **denied**.

Dated this 21st day of July, 2017.

Honorable Steven P. Logan
United States District Judge

13